United States District Court
Southern District of Texas
**ENTERED**
January 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNA LYNNELL GRIFFIN, *on behalf of S.M., a minor*, | § § § § § § § § § § § § | |
| Plaintiff. | | |
| V. | | CIVIL ACTION NO. 4:22-cv-04535 |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | | |
| Defendant. | | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Shanna Lynnell Griffin ("Griffin")—proceeding without a lawyer (pro se) on behalf of her minor child, S.M.—seeks judicial review of an administrative decision denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Pending before me are competing motions for summary judgment filed by Griffin and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 17–18. After reviewing the briefing, the record, and the applicable law, I recommend that Griffin's motion for summary judgment (Dkt. 17) be **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 18) be **GRANTED**.

## **BACKGROUND**

On August 24, 2020, Griffin filed an application for Title XVI supplemental security income on behalf of S.M., alleging disability beginning December 7, 2013. Griffin's application on behalf of S.M. was denied and denied again upon

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing, during which Griffin amended S.M.'s alleged onset date to August 24, 2020. Following the hearing, the ALJ found that S.M. was not disabled. Griffin filed an appeal with the Appeals Council. The Appeals Council denied review on November 1, 2022, making the ALJ's decision final and ripe for judicial review. Griffin timely filed this appeal on December 30, 2022.[2]

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

---

[2] The Fifth Circuit has held "that a non-attorney parent [should] be permitted to sustain a *pro se* action on behalf of a minor child in SSI appeals." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

The Commissioner uses a three-step sequential process to determine whether a child is disabled:

> (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has a medically determinable impairment or combination of impairments that is severe; and (3) if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a Listing.

*Holliday ex rel. D.H. v. Saul*, No. H-18-1412, 2019 WL 3323748, at *6 (S.D. Tex. July 9, 2019) (citing 20 C.F.R. § 416.924(b)–(d)). An impairment causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the relevant listings, or if the impairment functionally equals the listings. *See* 20 C.F.R. § 416.924(d).

To determine functional equivalence, the Commissioner considers how the child functions in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; and (6) health and physical well-being. *See id.* § 416.926a(b)(1)(i)–(vi). To functionally equal the listings, the child must have "marked" limitations in two domains, or an "extreme" limitation in one domain. *See id.* 416.926a(d). A child has a "marked" limitation in a domain when her "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." *See id.* § 416.926a(e)(2)(i). A child has an "extreme" limitation in a domain when her "impairment(s) interferes very seriously" with these same abilities. *See id.* § 416.926a(e)(3)(i).

## THE ALJ'S DECISION

At Step 1, the ALJ found that S.M. "has not engaged in substantial gainful activity since August 24, 2020, the amended onset date and application date." Dkt. 6-1 at 15.

At Step 2, the ALJ found that S.M. "has the following severe impairments: an attention deficit hyperactivity disorder, combined type; disruptive mood dysregulation disorder; oppositional defiant disorder; and anxiety." *Id.*

At Step 3, the ALJ found that S.M. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 16. The ALJ also found that S.M. "does not have an impairment or combination of impairments that functionally equals the severity of the listings." *Id.* Accordingly, the ALJ found that S.M. was not disabled.

## DISCUSSION

Griffin raises three issues in this appeal: (1) whether substantial evidence supports the ALJ's finding that S.M. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks; (2) whether the ALJ erred by not expressly considering whether S.M. met or medically equaled Listing 112.05; and (3) whether the new evidence that Griffin submitted to the Court warrants remand. I will address each issue in turn.

**A.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION**

Griffin argues that the record shows at least marked limitations in the areas of acquiring and using information and attending and completing tasks. Specifically, Griffin contends that: (1) S.M.'s scores on the Woodcock-Johnson Tests of Cognitive Abilities and Tests of Achievement, and Gray Oral Reading Test support a marked limitation in acquiring and using information; and (2) S.M.'s psychiatric diagnoses, teacher questionnaires, and the psychological consultative examiner's opinion support a marked limitation in attending and completing tasks. I understand and appreciate each of Griffin's arguments. I acknowledge that the evidence Griffin cites could conceivably support a finding of marked limitations in the domains of acquiring and using information and attending and completing tasks. But I cannot reweigh the evidence and reach a different conclusion than the ALJ simply because the outcome could arguably be different.

I can only find that an ALJ's decision is unsupported by substantial evidence "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no

4

contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). That is not the case here. As the ALJ observed:

> Ms. Griffin's allegations regarding [S.M.]'s symptoms and functional limitations are not fully consistent with the evidence of record, which does not document the presence of extreme or marked functional limitations. Specifically, [S.M.] has been prescribed medications for treatment of mental impairments, and the record documents an improvement in signs and symptoms associated with the mental impairments, with essentially normal mental status evaluations subsequent to the initial assessment. Further, contrary to Ms. Griffin's testimony that [S.M.] engages in self-harm with hitting of her head, there is no evidence that she has reported this behavior to [S.M.]'s treating sources. There is also no evidence that [S.M.] has experienced any exacerbation of psychologically-based symptoms or side effects of treatment that have resulted in the need for emergency treatment or hospitalization. School records also reflect no ongoing behavioral abnormalities. The record, in fact, reflects two reported incidents of disruptive behaviors in May 2022 (Exhibit 26E), and there is no evidence that [S.M.] has exhibited any behaviors that have resulted in the need for implementation of a behavioral plan. School records also document that when last assessed in March 2022, [S.M.] was receiving passing grades in all subjects with the exception of math, which was prior to the implementation of special education services.

Dkt. 6-1 at 21.

In other words, Griffin may be correct that there is evidence to support a finding that S.M. has marked limitations in two domains and is therefore disabled. But, as shown above—and throughout the ALJ's comprehensive, eight-page analysis—there is also evidence to support a finding that S.M. is *not* disabled. Specifically, the fact that S.M. did not receive mental health treatment until June 2021; the fact that S.M. improved after receiving mental health treatment; the fact that Griffin did not seek a change in S.M.'s medication; and the fact that S.M. is progressing in school after receiving medical treatment is evidence that supports the ALJ's decision. Griffin also argues that because "exhibits 4F–8F [and] 23E were not in the file at the time the [state agency] examiners rendered their opinion

. . ., references to the weight given those evaluations would be of little use given that a substantial portion of the medical information was not available to the examiners." Dkt. 17 at 3. This argument is unpersuasive because the ALJ explicitly recognized this fact and evaluated both opinions against the "longitudinal record." Dkt. 6-1 at 23–24. Again, I cannot reweigh the evidence.

* * *

When there is enough evidence—substantial evidence—to support the ALJ's decision, I must affirm that decision, even if there is contrary evidence. Accordingly, I find that the ALJ's decision that S.M. does not have marked limitations in at least two domains is supported by substantial evidence.

### B. ANY ERROR BY THE ALJ IN NOT EXPRESSLY DISCUSSING LISTING 112.05 WAS HARMLESS

I will assume, without deciding, that it was error for the ALJ to not have expressly discussed whether S.M. met or medically equaled Listing 112.05.[3] Even so, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quotation omitted). In other words, remand is not warranted if the error is harmless. A party can demonstrate that her substantial rights were affected when she can show that she meets the listing requirements and there is no contradictory medical evidence. *See id.* So, the question becomes whether S.M. can meet or medically equal the requirements of Listing 112.05:

> **112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:**
>
> A. Satisfied by 1 and 2 (see 112.00H):
>
>   1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

---

[3] This seems to have been the Commissioner's approach as well. Rather than arguing that the ALJ did not err, the Commissioner proceeds straight to harmless error analysis in his briefing. *See* Dkt. 19 at 10–11.

6

   2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

B. Satisfied by 1 and 2 (see 112.00H):

   1. Significantly subaverage general intellectual functioning evidenced by a or b:

      a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

      b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

   2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

      a. Understand, remember, or apply information (see 112.00E1); or

      b. Interact with others (see 112.00E2); or

      c. Concentrate, persist, or maintain pace (see 112.00E3); or

      d. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Part 404, Subpt. P, App'x 1, Part B § 112.05.

Griffin points me to no evidence that S.M. has "[s]ignificant deficits in adaptive functioning" manifested by either S.M.'s "dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence"; or "extreme limitation of one, or marked limitation of two" areas of mental functioning. *See id.* § 112.05(A)(2), (B)(2). I find no such evidence in the record.[4] Accordingly, S.M.'s substantial rights were not affected,

---

[4] Although the ALJ did not expressly discuss whether S.M. met the requirements of Listing 112.05, the ALJ did expressly find that "[S.M.]'s mental impairments, alone or in combination, have not resulted in an extreme limitation of one, or marked limitation of

and any error committed by the ALJ in failing to explicitly discuss whether S.M. satisfied the requirements of Listing 112.05 was harmless.

### C. THE ADDITIONAL EVIDENCE SUBMITTED TO THIS COURT DOES NOT WARRANT REMAND

Griffin's final argument is that S.M.'s case should be remanded based on "the new evidence of Dyslexia on 04/26/2023 by [Houston Independent School District]." Dkt. 17 at 4. The new evidence is a January 17, 2023 Behavioral Healthcare Services Recovery Plan and Safety Plan (Dkt. 4 at 1–8); a February 17, 2023 Lamar Consolidated Independent School District Full and Individual Evaluation (Dkt. 5); and an April 24, 2023 Houston Independent School District Admission, Review, and Dismissal/Individualized Education Program (ARD/IEP) Team Report (Dkt. 17 at 5–31). Each of these documents post-dates June 1, 2022—the date the ALJ issued his decision. I cannot consider evidence after June 1, 2022 unless it is material *and* concerns the contested time period and not merely a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *See Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). I will assume, without deciding, that this new evidence is material. Even so, this evidence does not concern the contested time period because it shows either a subsequently acquired disability or the deterioration of a condition that was not previously disabling. This is because the record before the ALJ "indicated that [S.M.] did not meet the diagnostic criteria for Dyslexia or a Specific Learning Disability." Dkt. 6-1 at 21. Accordingly, the evidence Griffin submitted to this Court post-dating the ALJ's decision does not warrant remand.[5]

---

two of the following: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; or (4) adapting or managing oneself." Dkt. 6-1 at 16.

[5] As the Commissioner notes, Griffin also submitted documents to this Court that were already in the record before the ALJ. The submission of these documents is irrelevant. *See* Dkt. 19 at 11 (observing that the October 18, 2021 records from Dr. Festus Uzokwe, Dkt. 4 at 9–11, are "already in the record at Exhibit 7F"); *see also* Dkt. 6-1 at 458–60.

## CONCLUSION

For the reasons discussed above, I recommend that Griffin's motion for summary judgment (Dkt. 17) be **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 18) be **GRANTED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 19th day of January 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE